UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RICHARD P. WASHBURN, | § | |
| | § | |
| **Plaintiff,** | § | |
| VS. | § | Civil No. G-05-346 |
| | § | |
| DR. FRANCIS J. HARVEY, | § | |
| SECRETARY OF THE ARMY, | § | |
| | § | |
| **Defendant.** | | |

## MEMORANDUM OPINION AND ORDER

This case is an employment dispute between Richard P. Washburn ("Washburn") and his former employer, the United States Army Corps of Engineers ("USACE"). Defendant, Dr. Francis J. Harvey, has been sued in his official capacity as the Secretary of the Army. Washburn initially asserted discrimination claims under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Rehabilitation Act. He also alleged that he was denied a promotion in retaliation for engaging in activities protected by Title VII. The district court judge previously assigned to this case dismissed all of Washburn's claims on summary judgment. The case was appealed to the Court of Appeals for the Fifth Circuit which affirmed in part and reversed in part. The Court of Appeals affirmed the dismissal of the ADA and Title VII claims, but reversed the dismissal of the Rehabilitation Act claim and remanded the case for further proceedings. *Washburn v. Harvey*, 504 F.3d 505 (5th Cir.2007). The case was then assigned to this Court, which conducted a trial without a jury. Having reviewed all evidence on record, the Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Plaintiff Richard Washburn was first employed by USACE in Galveston, Texas in 1991. Trial Tr. at 41.  He started as a Real Estate Appraiser and was paid on the civilian government pay scale as a GS-11.  *Id.*  In 1994, Richard Harrison became the Chief of Real Estate in the Galveston USACE office in 1994.  *Id.* at 156.  After Richard Harrison became the Chief, the division went through a reorganization during which two appraisers transferred to the Fort Worth Division, and the remainder of the office was consolidated from four branches into two.  **Def.'s Ex. 8 at 3.**  In January, 2002, Leroy Hilton, a GS-12 Supervisory Appraiser, retired.  **Def.'s Ex. 9 at 3.**  After Hilton retired, USACE did not hire any additional appraisers. Trial Tr. at 117.  The Supervisory Appraiser position that Hilton left open was a GS-12 position that required direct supervision and daily observation of other USACE employees.  Trial Tr. at 163, 204-06.  Instead of hiring a new Supervisory Appraiser or promoting one of the other appraisers, Richard Harrison rotated other appraisers in and out of the position.  *Id.* at 180.  In May, 2002, Don Harrison, a GS-12 appraiser, was temporarily appointed to the Supervisory Appraiser position.  *Id.* at 50.  When Don Harrison retired in June of 2002, Washburn was promoted to the GS-12 position.  *Id.*  When Washburn was promoted, the position was awarded non-competitively and was intended not to exceed 120 days. Pl.'s Ex. C at 2.

While Washburn was serving in the Supervisory Appraiser position, he was hospitalized and underwent surgery.  Trial Tr. at 114.  He continued serving in his temporary position until his term ended in October 2002.  *Id.* at 51.  After Washburn left the position, Arlyn Edwards was temporarily promoted on the same terms that Washburn had been.  *Id.*  While Edwards was in the position, it was competitively advertised as a "Temporary Promotion–Not-to-Exceed 1 Year."  Pl.'s Ex. H.  On

January 12, 2003, Washburn was selected for and took over the position. Trial Tr. at 176. In the summer of 2003, Washburn underwent an additional surgery and was required to avoid contact with crowds until his wounds healed. *Id.* at 138-39. After that, he worked from home until the promotion term ended in January, 2004. Pl.'s Ex. C at 3. While he was working at home, Washburn was placed into USACE's Disability Flexiplace program. Pl.'s Exs. E, F. During his temporary service as a Supervisory Appraiser, Washburn received excellent ratings on his job evaluation report. Pl.'s Ex. B at 1. In January, 2004, Arlyn Edwards was offered another temporary promotion to the GS-12 position. Trial Tr. at 109. While Edwards was in the position, she signed Washburn's "Request for Reasonable Accommodation" which constituted her approval of the Flexiplace arrangement. Pl.'s Ex. F. Washburn's statement, which Edwards approved, states that "I am a qualified individual with a physical impairment which substantially limits one or more major life activities." *Id.* Edwards served in that position until May, 2004 and retired in June, 2004.

After Edwards's retirement, Randolph Richardson was detailed into the Supervisory Appraiser position, and he remained there until January, 2007. Trial Tr. at 204. Richardson was already a GS-12 employee at the time he was detailed to the position. *Id.* Within USACE, an employee can be detailed to another position at his or her same pay grade without competing for the position. Trial Tr. at 186. However, an employee cannot be promoted permanently to a higher pay grade without competing for the position. Def.'s Ex. 4. Accordingly, Washburn could not have been permanently promoted to the Supervisory Appraiser position without a competitive bidding process. By rotating employees in and out of the Supervisory Appraiser position, Richard Harrison avoided having to post the position to applicants and allowed all of his employees to take turns working at

3

the higher rate. Richard Harrison never permanently promoted anyone to the Supervisory Appraiser position.

After Richardson was detailed to the Supervisory Appraiser position, Washburn complained that he had not been selected for a permanent promotion. Pl.'s Ex. D at 1. However, to continue in the Supervisory position, Washburn would need to be working in the office in order to actually supervise the other employees working under him. Trial Tr. at 130-31. Even though Washburn received excellent ratings during his temporary promotion, it was reasonable for Harrison to determine that he could not be permanently promoted while he continued to work from home on a full-time basis. Washburn ultimately retired from USACE on September 30, 2005. Trial Tr. at 79.

Washburn sued USACE in this action, alleging that the failure to promote him permanently was discrimination on the basis of the disability caused by his cancer surgeries. While the Court can sympathize with the uncertainty created by the frequent turnover, Washburn's testimony at trial gave the impression that he was trying to take advantage of this uncertainty in order to increase the salary in the years before his retirement so that his pay during retirement would be higher.

## CONCLUSIONS OF LAW

A.    **Legal Standard**

To qualify for relief under the Rehabilitation Act, Washburn must prove (1) he is an "individual with a disability"; (2) who is "otherwise qualified" for the position sought; (3) who worked for a "program or activity receiving Federal financial assistance"; and (4) that an adverse employment decision was made solely because of his disability. 29 U.S.C. § 794(a) (2006); *McKay v. Johanns*, 265 Fed. Appx. 267, 268 (5th Cir. 2008); *Hileman v. City of Dallas, Tex.*, 115 F.3d 352,

352 (5th Cir. 1997); *Chandler v. City of Dallas, Tex.*, 2 F.3d 1385, 1390 (5th Cir. 1993). Washburn

is not entitled to relief because he cannot establish the second or fourth prongs of his case.

**B.      Analysis**

   **1.      Washburn was an individual with a disability.**

Washburn has shown that he was an individual with a disability.  Under the Rehabilitation

Act, which incorporates substantive provisions of the Americans with Disabilities Act, a person is

disabled if he "either (1) actually is disabled, (2) is regarded as being disabled, or (3) has a record

of being disabled." *Dupre v. Charter Behavioral Health Sys.*, 242 F.3d 610, 613 (5th Cir. 2001).

Washburn claims that he was actually disabled during the events made the basis of this lawsuit. A

disability is defined as "a mental or physical impairment [which] must substantially limit an

individual's ability to perform at least one major life activity." *Waldrip v. Gen. Elec. Co.*, 325 F.3d

652, 655 (5th Cir. 2003).  Whether an impairment is substantially limiting depends on "its nature and

severity, its duration or expected duration, and its permanent or expected permanent or long-term

impact." *Dupre*, 242 F.3d at 614.  "Temporary , non-chronic impairments of short duration, with

little or no long term or permanent impact, are usually not disabilities." *Bennett v. Calabrian Chems.*

*Corp.*, 126 Fed. Appx. 171, 172 (5th Cir. 2005).  "Major life activities" are those activities of

"central importance to daily life." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122

S. Ct. 681, 151 L. Ed. 2d 615 (2002).  They include such functions as "caring for one's self,

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45

C.F.R. § 84.3(j)(2)(ii).  A disability does not substantially limit a person's ability to work unless he

is precluded "from a class of jobs or a broad range of jobs." *Dupre*, 242 at 614.  "The inability to

perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Pryor v. Trane*, 138 F.3d 1024, 1027 (5th Cir. 1998).

Washburn claims that his disability was the wound left from surgery for jaw cancer, and that it substantially limited his major life activity of working because he had to work from home to avoid infection. This does not meet the statutory definition of a disability for two reasons. First, Washburn presented no medical evidence that his purported disability was permanent or that it would have a long-term impact. He testified that he suffered from the condition for two-and-a-half years, from June 2003 to January 2006, but he did not present any medical evidence supporting his claim. However, even if he had, there is no indication that Washburn's condition was permanent. Several courts have held that temporary conditions following surgery, eventually ending in full recovery, are not disabilities. *See Pryor*, 138 F.3d at 1028; *Bennet*, 126 Fed. App. at 172.

Additionally, Washburn did not establish that he was precluded "from a class of jobs or a broad range of jobs." In fact, the evidence shows the contrary. Washburn remained employed with USACE until his retirement, and the evidence shows that he was fully capable of performing the job of a GS-11 Real Estate Appraiser. The only job Washburn indicates that he was unable to perform was the GS-12 Supervisory Appraiser. He could not perform this job because he was unable to supervise other employees from his home office. Showing that he was incapable of performing one specific job for a well-defined period of time is insufficient to show that Washburn was actually disabled.

However, Washburn has shown that he was regarded as being disabled. An individual is regarded as disabled if "a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *Murphy v. United Parcel Service,*

6

*Inc.*, 527 U.S. 516, 522, 119 S. Ct. 2133, 2137, 144 L. Ed. 2d 484 (1999).  The placement of

Washburn on the Disability Flexiplace program, together with Edwards's approval of Washburn's

statement indicates that USACE regarded Washburn as disabled, even though he was not actually

disabled.  This is sufficient to satisfy the first element of Washburn's Rehabilitation Act claim.

### 2.      Washburn was not otherwise qualified for the position.

Washburn cannot establish the second element of his case.  In order to show that he was

otherwise qualified for the position of Supervisory Appraiser, Washburn must show that he could

perform the "essential functions" of a Supervisory Appraiser with no more than a "reasonable

accommodation." *Chiari v. City of League City*, 920 F.2d 311, 315 (5th Cir. 1991).  Washburn

could not indefinitely perform the role of Supervisory Appraiser without appearing in the office

where the employees he was purportedly supervising were working.  The only accommodation ever

requested or mentioned by Washburn was a work-from-home arrangement.   However, this

arrangement could not enable Washburn to perform the essential functions of the supervisor since

he would still remain separated from the supervised employees.  Accordingly, Washburn has not

shown that he was able to perform the essential functions of the job without more than a reasonable

accommodation, and he has failed to establish the second prong of his case.

### 3.      Washburn was employed by a federal agency.

Washburn's employment with USACE establishes the third prong of his case.

### 4.      Washburn was not discriminated against by reason of his disability.

Washburn must show that the challenged employment action, the failure to permanently

promote him to a GS-12 position, was motivated solely by his disability.  The evidence before the

court does not establish such a finding.  There is no direct evidence of discrimination.  There is also

no circumstantial evidence of discrimination since no employee, disabled or otherwise, was permanently promoted to the GS-12 position. Even if Washburn had presented evidence that a non-disabled employee was promoted to the position he sought, USACE presented a legitimate nondiscriminatory reason for its failure to promote Washburn. Specifically, that Washburn could not fulfill the supervisory aspect of the GS-12 position while working at home. Richardson and Richard Harrison both testified that he could not fulfill the requirements of the position while working at home because supervising the other employees required presence in the office. There is no evidence that this proffered reason was pretextual. This is sufficient to convince the court that USACE did not have discrimination as a motive in declining to promote Washburn.

## CONCLUSION

Since Plaintiff has not proved a case of discrimination under the Rehabilitation Act, his claims are DISMISSED WITH PREJUDICE and any relief he seeks is DENIED.

ORDERED this ___21___ day of _____, 2009.

_____
HAYDEN HEAD
CHIEF JUDGE

8